# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

Civil Action No.: _____

ALEXIS N. KNOX,

Plaintiff,

v.

FREEDOM MORTGAGE CORPORATION;

GROSS POLOWY LLC;

ALEXA F. PATTERSON, ESQ.;

COURTNEY R. SHED, ESQ.;

GOVERNMENT NATIONAL MORTGAGE ASSOCIATION (GINNIE MAE), if applicable;

UNKNOWN NOTE HOLDER(S); and

JOHN DOES 1-10,

Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

## PRELIMINARY STATEMENT

This is a civil rights and consumer protection action brought by Plaintiff Alexis N. Knox, an active-duty United States military servicemember who has served her country continuously since April 11th, 2017, against Freedom Mortgage Corporation and its counsel for willfully violating the Servicemembers Civil Relief Act, 50 U.S.C. sections 3901 et seq. (hereinafter "SCRA"), committing fraud upon the court, engaging in unlawful foreclosure practices in connection with her VA-guaranteed home loan, and unlawfully locking Ms. Knox out of her home without any court order authorizing her dispossession.

While Ms. Knox was on active military duty, holding an active SECRET security clearance and having received authenticated federal military orders as recently as February 24th, 2026

identifying her home at 677 Zion Road, Egg Harbor Township, New Jersey as her military Home of Record, Freedom Mortgage Corporation and its counsel filed a sworn affidavit in the Superior Court of New Jersey falsely certifying that she was not in military service. On the strength of that false affidavit, and without the independent judicial inquiry mandated by federal law, the state court entered a summary judgment order stripping Ms. Knox of her home.

Defendants did not stop there. After Ms. Knox moved to vacate that judgment and, upon denial, sought reconsideration on the grounds that she is an active-duty servicemember, Freedom Mortgage and its counsel filed a second sworn affidavit of non-military service on June 25th, 2026, again falsely certifying that Ms. Knox was not in military service. The filing of this second false affidavit, in direct response to Ms. Knox's assertion of her SCRA rights and in the face of her authenticated military documentation, constitutes a deliberate and knowing repetition of the original fraudulent conduct. It demonstrates that Defendants' misrepresentations are not the product of oversight or database error, but of willful disregard for Ms. Knox's federally protected rights.

Then, on or about July 3rd, 2026, while this dispute over Ms. Knox's military status was actively pending and without any sheriff's sale, writ of possession, or court order authorizing dispossession, Ms. Knox arrived at her home to find that the locks had been changed and that she was locked out of her own house. This self-help lockout of an active-duty servicemember from her residence violates 50 U.S.C. section 3951, which prohibits evicting a servicemember from her primary residence during military service except by court order, and New Jersey's prohibition on self-help eviction, N.J.S.A. 2A:39-1 et seq.

The SCRA exists precisely to prevent this. Congress enacted the SCRA to protect active-duty servicemembers from civil judgments entered against them while they are serving the nation and may not be able to fully attend to their civil legal affairs. The filing of a sworn affidavit falsely certifying non-military status is not a clerical error. It is a willful act that deprived a servicemember of the legal protections to which she was entitled and that exposed the court to entering an order it lacked the statutory authority to enter. The filing of a second such affidavit, after the issue had been squarely placed before the court, eliminates any colorable claim of innocent mistake. The

subsequent lockout of Ms. Knox from her home without lawful process escalates that misconduct from paper fraud to physical dispossession.

This action also raises a fundamental threshold question that must be resolved before any foreclosure can proceed: who actually holds the promissory note? The subject loan is a VA-guaranteed mortgage. Freedom Mortgage is a confirmed issuer and servicer in the Government National Mortgage Association (Ginnie Mae) mortgage-backed securities program for VA loans. In the ordinary course of the secondary mortgage market, VA-guaranteed notes are routinely transferred into Ginnie Mae mortgage-backed security pools, with the originating or acquiring lender retaining only servicing rights. If the subject note has been pooled into a Ginnie Mae trust or otherwise transferred to an unknown holder, Freedom Mortgage may be a servicer only and may lack the standing as the real party in interest to maintain a foreclosure action in its own name. This Court is asked to compel discovery to identify the true holder of the note before any foreclosure judgment may stand.

Ms. Knox seeks actual damages, punitive damages, injunctive relief voiding the state court judgment and restoring her possession of and access to her home, attorneys' fees and costs pursuant to the SCRA's civil enforcement provisions, 50 U.S.C. sections 4042 and 4043, the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., common law fraud, negligence, and related federal and state law claims.

## JURISDICTION AND VENUE

1.      This Court has federal question jurisdiction pursuant to 28 U.S.C. section 1331 over Plaintiff's claims arising under the Servicemembers Civil Relief Act, 50 U.S.C. sections 3901 et seq., including 50 U.S.C. sections 3931 and 3951, and 38 C.F.R. section 36.4350.

2.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. section 1367, as those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this District pursuant to 28 U.S.C. section 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this

District, and the subject property is located in Atlantic County, New Jersey, within this District.

4.    The subject property is located at 677 Zion Road, Egg Harbor Township, New Jersey 08234, Block 5509, Lot 21 on the municipal tax map of Egg Harbor Township, Atlantic County, New Jersey (hereinafter "the Property").

## THE PARTIES

5.    Plaintiff Alexis N. Knox is a natural person and an active-duty member of the United States Armed Forces. She has served continuously on active duty since April 11th, 2017. She holds an active SECRET security clearance. Her official military Home of Record is 677 Zion Road, Egg Harbor Township, New Jersey 08234.

6.    Defendant Freedom Mortgage Corporation (hereinafter "Freedom Mortgage") is a corporation organized under the laws of the State of New Jersey with its principal place of business at 951 Yamato Road, Suite 175, Boca Raton, Florida 33431. Freedom Mortgage is a federally licensed mortgage servicer and a confirmed issuer and servicer in the Government National Mortgage Association (Ginnie Mae) mortgage-backed securities program for VA-guaranteed loans. Freedom Mortgage is the plaintiff in the underlying state court foreclosure action, Freedom Mortgage Corporation v. Alexis N. Knox, et al., Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. F-003056-25 (hereinafter "the State Court Action").

7.    Defendant Gross Polowy LLC (hereinafter "Gross Polowy") is a law firm and limited liability company that serves as foreclosure counsel to Freedom Mortgage throughout New Jersey. At all relevant times, Gross Polowy acted as agent and counsel for Freedom Mortgage in the State Court Action.

8.    Defendant Alexa F. Patterson, Esq. is an attorney employed by or associated with Gross Polowy who appeared as counsel of record for Freedom Mortgage in the State Court Action, and who executed both the October 3rd, 2025 and the June 25th, 2026 Certifications of Non-Military Service at issue in this action. At all times relevant to this

Complaint, she acted within the course and scope of her employment and agency with Freedom Mortgage and Gross Polowy.

9.    Defendant Courtney R. Shed, Esq. is an attorney employed by or associated with Gross Polowy who appeared as counsel of record for Freedom Mortgage in the State Court Action. At all times relevant to this Complaint, she acted within the course and scope of her employment and agency with Freedom Mortgage and Gross Polowy.

10.   Defendant Government National Mortgage Association (hereinafter "Ginnie Mae") is a wholly-owned government corporation within the United States Department of Housing and Urban Development, 451 7th Street SW, Washington, D.C. 20410. Ginnie Mae is named as a defendant to the extent that it may be the beneficial owner or trustee of a mortgage-backed security pool into which the subject promissory note was deposited, which would make it a necessary party to any determination of the true holder of the note. Plaintiff will seek to clarify Ginnie Mae's interest through discovery and will seek leave to amend as appropriate.

11.   Defendant Unknown Note Holder(s) is a placeholder designation for any person, entity, trust, or investment vehicle that is, or at any relevant time was, the holder or beneficial owner of the original promissory note executed by Ms. Knox on or about February 28th, 2022. The identity of the Unknown Note Holder(s) is not presently ascertainable to Plaintiff without discovery. Plaintiff will seek to identify and name this defendant through the discovery process and will seek leave to amend this Complaint accordingly.

12.   Defendants John Does 1 through 10 are currently unknown individuals and entities who participated in, authorized, directed, or facilitated the conduct described herein, including the persons and entities who changed the locks on the Property. Plaintiff will seek to identify these parties through discovery and will amend this Complaint accordingly.

**FACTUAL ALLEGATIONS**

**A.  Ms. Knox's Active Military Service and the Subject VA Loan**

13. Plaintiff Alexis N. Knox has served as an active-duty member of the United States Armed Forces continuously since April 11th, 2017.

14. Ms. Knox holds an active SECRET security clearance from the United States government. Her active military status is documented in authenticated federal military orders and official government records.

15. On or about February 28th, 2022, Ms. Knox executed a promissory note in the original principal amount of $262,911.00 in favor of Mortgage Research Center, LLC d/b/a Veterans United Home Loans (hereinafter "Veterans United"). The note was a VA-guaranteed loan made pursuant to the Department of Veterans Affairs Home Loan Guaranty Program, 38 U.S.C. sections 3710 et seq. (hereinafter "the Note").

16. The Note was secured by a mortgage on the Property, which was recorded on April 18th, 2022 in the Atlantic County Clerk's Office (hereinafter "the Mortgage").

17. The Mortgage was subsequently assigned to Freedom Mortgage Corporation by a recorded assignment dated July 19th, 2023. The recording of this assignment establishes Freedom Mortgage's interest in the security instrument. It does not establish that Freedom Mortgage is or was the holder of the Note, or that Freedom Mortgage has standing to foreclose in its own name.

18. The Property at 677 Zion Road, Egg Harbor Township, New Jersey 08234 is Ms. Knox's official military Home of Record and her primary residence when not on military assignment.

**B.  The Unknown True Holder of the Note and the Ginnie Mae Question**

19. The VA-guaranteed mortgage loan market operates through a well-established secondary market structure in which VA loans are routinely purchased, transferred, and pooled into Ginnie Mae mortgage-backed securities shortly after origination. Freedom Mortgage is a confirmed issuer and servicer in the Ginnie Mae program and regularly pools VA-guaranteed loans into Ginnie Mae mortgage-backed security trusts.

20. In the Ginnie Mae program, the issuer (here, potentially Freedom Mortgage or a predecessor) deposits the original promissory notes into Ginnie Mae pools. The beneficial interest in those notes is then held by the investors in the mortgage-backed security, or by the trust itself, not by the servicer. The servicer retains only the right to service the loans, including collecting payments and, when authorized, initiating foreclosure proceedings on behalf of the true note holder.

21. Upon information and belief, the Note executed by Ms. Knox on February 28th, 2022 was, at some point between origination and the present, transferred, sold, endorsed, or deposited into one or more Ginnie Mae mortgage-backed security pools, or otherwise transferred to an unknown holder or holders. If so, Freedom Mortgage is, and at all relevant times has been, a servicer only and is not the holder of the Note within the meaning of the Uniform Commercial Code.

22. A party that cannot establish that it is the holder of the original promissory note, or a non-holder in possession with the rights of a holder, lacks standing to foreclose under applicable law. The right to foreclose on a property flows from the right to enforce the note, not from the assignment of the mortgage instrument alone.

23. The State Court Action record does not establish: (a) whether the Note was properly endorsed to Freedom Mortgage in compliance with the Uniform Commercial Code; (b) whether Freedom Mortgage had physical possession of the original Note at the time the foreclosure complaint was filed on March 18th, 2025; (c) whether the Note was deposited into a Ginnie Mae pool or otherwise transferred to any third party at any time after origination; or (d) the identity of the current holder or beneficial owner of the Note.

24. These questions are not academic. They are jurisdictional. If Freedom Mortgage is not the holder of the Note, it is not the real party in interest under Federal Rule of Civil Procedure 17(a) and lacks constitutional and prudential standing to prosecute the State Court Action or to obtain any foreclosure judgment against Ms. Knox's home.

25. Plaintiff respectfully requests that this Court order expedited discovery directed to Freedom Mortgage, Ginnie Mae, and any other relevant parties to identify the true holder of the Note

and to compel the production of the original Note, the complete chain of endorsements, any pooling and servicing agreements, and all documents reflecting any transfer of the Note since its origination on February 28th, 2022.

## C.  The Foreclosure Action and the Mandatory SCRA Framework

26.    On March 18th, 2025, Freedom Mortgage, through its counsel Gross Polowy, filed a foreclosure complaint against Ms. Knox in the State Court Action.

27.    At the time the foreclosure complaint was filed, Ms. Knox was an active-duty servicemember entitled to the full protections of the SCRA, 50 U.S.C. sections 3901 et seq.

28.    The SCRA imposes an affirmative, non-delegable obligation on any plaintiff seeking a civil judgment to file a sworn affidavit stating whether the defendant is in military service and showing the necessary facts to support that affidavit. 50 U.S.C. section 3931(b)(1). This duty is placed squarely on the plaintiff and cannot be satisfied by a private database search alone.

29.    The SCRA further mandates that if the required affidavit cannot be obtained, the court shall appoint an attorney to represent the defendant and protect her interests before any judgment is entered. 50 U.S.C. section 3931(b)(2).

30.    Any judgment entered in violation of these protections may be vacated, modified, or stayed by the court at any time during the period of military service or within ninety days thereafter. 50 U.S.C. section 3931(g). This right operates independently of, and is superior to, any state procedural rule by operation of the Supremacy Clause of the United States Constitution, Article VI, Clause 2.

31.    Additionally, any person who makes or uses an affidavit permitted under 50 U.S.C. section 3931(b) knowing it to be false shall be fined under Title 18 of the United States Code, or imprisoned for not more than one year, or both. 50 U.S.C. section 3931(c).

## D.  The First False Military Status Affidavit

32.    On October 3rd, 2025, Freedom Mortgage's counsel, Gross Polowy, acting through attorneys Alexa F. Patterson and/or Courtney R. Shed, filed with the Superior Court of

New Jersey a Certification of Non-Military Service certifying under oath that Ms. Knox was not in military service (hereinafter "the First False Affidavit").

33. The First False Affidavit was sworn under penalty of law and was submitted to the court for the express purpose of obtaining a summary judgment of foreclosure against Ms. Knox's home, which is her military Home of Record.

34. The central representation in the First False Affidavit, that Ms. Knox was not in military service, was false. Ms. Knox had been serving continuously on active duty since April 11th, 2017 and was on active military duty at the time the First False Affidavit was filed on October 3rd, 2025.

35. Defendants knew, or should have known through reasonable inquiry, that the representation in the First False Affidavit was false. Ms. Knox's military status was ascertainable through multiple independent channels, including but not limited to: direct inquiry to Ms. Knox; review of the VA loan file, which by its nature identifies Ms. Knox as a servicemember or veteran eligible for VA home loan benefits; consultation with the Department of Veterans Affairs; and inquiry through military personnel records available to creditors servicing VA-guaranteed loans.

36. The VA-guaranteed nature of the subject loan was itself a red flag requiring heightened diligence regarding Ms. Knox's military status. VA home loan benefits are exclusively available to eligible veterans, active-duty servicemembers, and certain surviving spouses. Freedom Mortgage, as a VA-approved lender and servicer, was fully aware of this fact at all relevant times.

37. The Department of Defense SCRA database, upon which Defendants relied, has known and documented limitations. It does not reliably capture all categories of active-duty servicemembers, particularly those serving in reserve components, on special assignment, or in roles adjacent to intelligence or classified functions. A negative result from a DoD database search does not constitute a safe harbor under the SCRA when independent grounds for inquiry exist, including the VA-guaranteed nature of the loan.

38. Despite the inherent red flags presented by a VA-guaranteed loan and the known limitations of the DoD database, Defendants made no meaningful independent inquiry into Ms. Knox's military status before filing the First False Affidavit.

**E. The State Court Judgment Procured Through the First False Affidavit**

39. On October 9th, 2025, Freedom Mortgage filed a Motion for Summary Judgment in the State Court Action.

40. On November 7th, 2025, the Superior Court of New Jersey entered a Summary Judgment Order granting Freedom Mortgage's motion, striking Ms. Knox's Answer and affirmative defenses, and transferring the matter as uncontested (hereinafter "the State Court Judgment").

41. The State Court Judgment was entered in direct reliance on the First False Affidavit, which caused the court to conclude that it had no independent obligation under 50 U.S.C. section 3931 to conduct a judicial inquiry into Ms. Knox's military status or to appoint counsel to protect her interests before entering judgment.

42. Had the First False Affidavit not been filed, or had the state court conducted the independent inquiry required by the SCRA, the court would have been required to appoint counsel to represent Ms. Knox before any judgment could be entered. Ms. Knox would have been afforded the full protections of the SCRA, including the right to seek a stay of proceedings for a minimum of ninety days and to litigate her meritorious defenses.

**F. Ms. Knox's Authenticated Military Orders and the Post-Judgment Proceedings**

43. Ms. Knox possesses authenticated federal military orders dated February 24th, 2026, confirming her active military status and identifying 677 Zion Road, Egg Harbor Township, New Jersey 08234 as her military Home of Record.

44. Ms. Knox's continuous active-duty service since April 11th, 2017 is documented in official government records.

45. On March 25th, 2026, Ms. Knox filed a Motion to Vacate the State Court Judgment in the state court foreclosure action, asserting her SCRA rights, the invalidity of the First False Affidavit, and other meritorious defenses.

46. On April 29th, 2026, the Superior Court of New Jersey denied Ms. Knox's Motion to Vacate, relying in significant part on Freedom Mortgage's representation that multiple SCRA database searches had not confirmed active military status and concluding that the SCRA protections under 50 U.S.C. section 3931 did not apply because Ms. Knox had entered an appearance in the proceedings.

47. The state court's reliance on SCRA database searches conducted by the very parties who filed the First False Affidavit, as the basis for denying SCRA protections, is a direct and continuing consequence of Defendants' fraudulent conduct and underscores the ongoing irreparable harm caused by the First False Affidavit.

48. Following the denial of her Motion to Vacate, Ms. Knox timely filed a Motion for Reconsideration with the Superior Court of New Jersey, again asserting her status as an active-duty servicemember and presenting her authenticated military documentation in support thereof.

**G.  The Second False Military Status Affidavit: A Knowing and Deliberate Repetition of Fraud**

49. On June 25th, 2026, while Ms. Knox's Motion for Reconsideration was pending and after Ms. Knox had placed her active-duty military status squarely before the court, Freedom Mortgage's counsel, Gross Polowy, acting through attorney Alexa F. Patterson, filed a second Certification of Non-Military Service with the Superior Court of New Jersey, again certifying under oath that Ms. Knox was not in military service (hereinafter "the Second False Affidavit"). The Second False Affidavit bears Docket No. F-003056-25, Trans ID: CHC2026202822, and was filed at 10:41 AM on June 25th, 2026.

50. The Second False Affidavit was filed in direct response to Ms. Knox's Motion for Reconsideration, in which she expressly asserted her status as an active-duty servicemember and submitted her authenticated military documentation to the state court.

Defendants were therefore fully aware, at the time the Second False Affidavit was filed, that their representation that Ms. Knox was not in military service was disputed, documented, and directly at issue.

51. The Second False Affidavit again relied upon a search of the Department of Defense Manpower Data Center (hereinafter "DMDC") database as the sole basis for certifying Ms. Knox's non-military status. The DMDC Status Report appended to the Second False Affidavit reflects a search conducted with an active duty status date of June 25th, 2026, for an individual identified as ALEXIS KNOX, SSN ending in 6403, and returned a result of "No" active duty status.

52. As alleged above, the DMDC database has known and documented limitations and does not reliably capture all categories of active-duty servicemembers. Those limitations were known or should have been known to Defendants at the time the Second False Affidavit was filed, particularly in light of Ms. Knox's authenticated military documentation already before the court. Indeed, the DMDC report appended to the Second False Affidavit itself warns that in the event any person asserts that the individual is on active duty or is otherwise entitled to SCRA protections, the requester is strongly encouraged to obtain further verification of the person's status directly from that person's Service, and that punitive provisions of the SCRA may be invoked against a party that fails to obtain such verification.

53. The filing of the Second False Affidavit after Ms. Knox had formally asserted her SCRA rights and presented her military documentation demonstrates conclusively that Defendants' false certifications are not the product of administrative error or database reliance in good faith. They are the product of a deliberate policy of using DMDC database results as a litigation shield, regardless of the known limitations of that database and regardless of countervailing documentary evidence of active military service.

54. The Second False Affidavit directly contributed to the Superior Court of New Jersey's denial of Ms. Knox's Motion for Reconsideration. The state court was again caused to rely on a false sworn certification of non-military status filed by the opposing party in lieu of conducting an independent judicial inquiry as required by 50 U.S.C. section 3931.

55. The filing of two separate false Certifications of Non-Military Service in the same proceeding, the second filed after Ms. Knox had expressly put her military status at issue and submitted authenticated documentation to the contrary, constitutes a pattern of willful fraudulent conduct directed at both Ms. Knox and the state court, and warrants the imposition of punitive damages and all other available sanctions.

**H.  Freedom Mortgage's Failure to Comply with VA Loss Mitigation Requirements**

56. As a servicer of a VA-guaranteed loan, Freedom Mortgage was obligated under 38 C.F.R. section 36.4350 to pursue all available loss mitigation alternatives prior to commencing foreclosure. Under 38 C.F.R. section 36.4350(g), the servicer is required to send the borrower written notice of loss mitigation options within specified timeframes following default and to conduct a comprehensive evaluation of all available VA loss mitigation alternatives before initiating foreclosure. These obligations are substantive conditions precedent to the right to foreclose, arising from federal regulation and independent of any contractual modification process.

57. The available VA loss mitigation options that Freedom Mortgage was required to evaluate and offer include, at minimum: repayment plans, special forbearance, loan modification, compromise sale, and deed in lieu of foreclosure, as enumerated in applicable VA guidelines and 38 C.F.R. part 36.

58. While a trial loan modification was offered to Ms. Knox in or around August 2023, that offer, standing alone, did not satisfy Freedom Mortgage's obligation to conduct and document a comprehensive evaluation of all available loss mitigation options immediately prior to filing the foreclosure complaint on March 18th, 2025. A failed trial modification from 2023 does not constitute fulfillment of the regulatory obligations that arise and must be satisfied immediately before the commencement of foreclosure proceedings.

59. Ms. Knox was never offered or meaningfully engaged regarding the full range of mandatory VA loss mitigation options in the period immediately preceding the March 18th, 2025 foreclosure filing. Freedom Mortgage's failure to satisfy its pre-foreclosure VA loss mitigation obligations was a separate and independent violation of federal law that caused Ms. Knox substantial harm, including the loss of viable alternatives to foreclosure.

### I.  Freedom Mortgage's Failure to Comply with the NJ Fair Foreclosure Act

60.   The New Jersey Fair Foreclosure Act, N.J.S.A. 2A:50-53 et seq. (hereinafter "FFA"), imposes mandatory pre-foreclosure notice requirements that are substantive conditions precedent to the right to foreclose. A notice of intention to foreclose must satisfy strict content and mailing requirements under N.J.S.A. 2A:50-56 before a foreclosure action may be commenced.

61.   Freedom Mortgage failed to establish by competent, admissible evidence that it strictly complied with the content and mailing requirements of the FFA's Notice of Intention to Foreclose. The certifications submitted in the State Court Action did not establish the required statutory content of the Notice or that it was properly mailed in strict compliance with the statute.

### J.  The Post-Judgment Illegal Lockout of Ms. Knox from Her Home

62.   At all relevant times, the Property has been and remains Ms. Knox's primary residence and official military Home of Record. The Property contains Ms. Knox's personal belongings, furnishings, and effects.

63.   Ms. Knox temporarily stayed at her father's nearby residence while work was performed on the Property. During that period, Ms. Knox returned to the Property regularly, on an essentially daily basis, maintained her possessions there, and at no time vacated, surrendered, or abandoned the Property. The Property was at all times secured, maintained, and occupied by Ms. Knox as her residence.

64.   On or about July 3rd, 2026, when Ms. Knox arrived at the Property, she discovered that the locks on the Property had been changed without her knowledge, consent, or any notice to her, and that she was locked out of her own home.

65.   No sheriff's sale of the Property has occurred. No writ of possession has been issued or executed. No court has entered any order authorizing any Defendant, or anyone acting on any Defendant's behalf, to take possession of the Property, to exclude Ms. Knox from the Property, or to change the locks.

66.    Upon information and belief, the locks were changed by Freedom Mortgage or by property-preservation vendors, contractors, or other agents acting at Freedom Mortgage's direction and on its behalf, pursuant to Freedom Mortgage's property-preservation practices for loans in foreclosure.

67.    Under New Jersey law, self-help eviction is prohibited. Even after entry of a foreclosure judgment, a mortgagee may lawfully dispossess a residential occupant only through issuance and execution of a writ of possession by the county sheriff. N.J.S.A. 2A:39-1 et seq. prohibits entry upon and detainer of residential real property except through lawful process.

68.    Under 50 U.S.C. section 3951(a), a landlord or other person may not evict a servicemember, or the dependents of a servicemember, from premises occupied primarily as a residence during a period of military service, except by court order. Ms. Knox was on active duty on July 3rd, 2026, and no court order authorized her dispossession.

69.    Under 50 U.S.C. section 3951(c), a person who knowingly participates in an eviction or attempted eviction in violation of section 3951 is subject to criminal penalties, including fine and imprisonment.

70.    The lockout occurred while this dispute over Ms. Knox's military status and the validity of the State Court Judgment was actively pending, after Ms. Knox had placed Defendants on direct notice of her active-duty status and her rights under the SCRA.

71.    As a result of the lockout, Ms. Knox has been denied access to her home and to the personal property inside it, and has been forced to remain displaced from her residence and military Home of Record. Ms. Knox reserves the right to supplement these allegations as the identity of the persons who changed the locks, and the instructions under which they acted, are ascertained through discovery.

## K.  Damages Suffered by Ms. Knox

72.    As a direct and proximate result of Defendants' conduct, Ms. Knox has suffered substantial damages, including but not limited to: (a) the impending loss of her home, which is her

official military Home of Record; (b) severe emotional distress, anxiety, and mental anguish arising from the prospect of losing her home while on active military duty; (c) damage to her credit and financial standing; (d) legal costs and expenses incurred in defending the State Court Action and seeking to vindicate her rights; (e) the loss of the SCRA protections to which she was entitled, including the right to appointed counsel and a stay of proceedings; (f) the loss of viable VA loss mitigation alternatives to foreclosure; (g) the unlawful deprivation of possession of, and access to, her home and the personal property located within it as a result of the July 2026 lockout, together with all displacement and out-of-pocket expenses resulting therefrom; and (h) such other consequential and incidental damages as will be proven at trial.

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF THE SERVICEMEMBERS CIVIL RELIEF ACT

## 50 U.S.C. sections 3931, 4042, and 4043

(Against All Defendants)

73. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

74. The SCRA, 50 U.S.C. section 3931(b)(1), mandates that before any judgment is entered in any civil action, the plaintiff must file a sworn affidavit stating whether or not the defendant is in military service and showing the necessary facts to support that affidavit.

75. The First False Affidavit filed by Defendants on October 3rd, 2025 was materially false. Ms. Knox was an active-duty servicemember at all times relevant to this action, having served continuously since April 11th, 2017.

76. The Second False Affidavit filed by Defendants on June 25th, 2026 was likewise materially false, and was filed with full knowledge that Ms. Knox had contested her non-military status and had submitted authenticated military documentation to the state court. The filing

of the Second False Affidavit establishes beyond any doubt that Defendants' violations of the SCRA are willful and ongoing.

77. Defendants' filing of both the First and Second False Affidavits was willful. Defendants knew, or should have known through reasonable inquiry, that Ms. Knox was an active-duty servicemember. The VA-guaranteed nature of the loan, the documented limitations of the DoD database as the sole means of military status inquiry, and Ms. Knox's authenticated military documentation placed Defendants on clear notice of the need for independent verification before swearing to her non-military status.

78. The First False Affidavit directly caused the state court to enter the State Court Judgment without conducting the independent judicial inquiry mandated by 50 U.S.C. section 3931(b)(1) and without appointing counsel to protect Ms. Knox's interests as required by 50 U.S.C. section 3931(b)(2). The Second False Affidavit directly caused the state court to deny Ms. Knox's Motion for Reconsideration without affording her the SCRA protections to which she was entitled.

79. Pursuant to 50 U.S.C. section 4042(a), any person aggrieved by a violation of the SCRA may in a civil action obtain any appropriate equitable or declaratory relief and recover all other appropriate relief, including monetary damages.

80. Pursuant to 50 U.S.C. section 4042(b), the court may award to a prevailing plaintiff the costs of the action, including a reasonable attorney fee.

81. Pursuant to 50 U.S.C. section 4043, nothing in sections 4041 or 4042 shall be construed to preclude or limit any remedy otherwise available under other law, including consequential and punitive damages.

82. By reason of Defendants' willful and repeated violations of the SCRA, Ms. Knox is entitled to actual damages, punitive damages, equitable relief vacating the State Court Judgment, a stay of all foreclosure proceedings, and an award of attorneys' fees and costs.

## COUNT II

## FRAUD AND FRAUD UPON THE COURT

(Against Freedom Mortgage, Gross Polowy LLC, Patterson, and Shed)

83. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

84. Defendants made a material misrepresentation of fact, specifically that Ms. Knox was not in military service, in the First False Affidavit filed with the Superior Court of New Jersey on October 3rd, 2025, and repeated and compounded that misrepresentation in the Second False Affidavit filed on June 25th, 2026.

85. Both representations were false. Ms. Knox was on active military duty at the time each affidavit was filed and had been continuously since April 11th, 2017.

86. Defendants knew the representations were false, or made them with reckless disregard for their truth or falsity, given the inherent notice provided by the VA-guaranteed nature of the loan, the known limitations of the DoD SCRA database as the sole source relied upon, and, with respect to the Second False Affidavit, Ms. Knox's authenticated military documentation that had already been placed before the court.

87. The false representations were made with the intent to induce the state court to enter and maintain judgment against Ms. Knox without the procedural protections mandated by federal law.

88. The state court relied upon the First False Affidavit in entering the November 7th, 2025 State Court Judgment and relied upon the Second False Affidavit in denying Ms. Knox's Motion for Reconsideration.

89. Ms. Knox suffered damages as a direct and proximate result of Defendants' fraudulent conduct, including the entry and maintenance of a judgment against her home, the loss of her federally mandated SCRA protections, and all damages described herein.

## COUNT III

## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

**N.J.S.A. 56:8-1 et seq.**

(Against Freedom Mortgage)

90. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

91. Freedom Mortgage is a person engaged in the sale or advertisement of merchandise and services within the meaning of the New Jersey Consumer Fraud Act (hereinafter "NJCFA"), N.J.S.A. 56:8-1 et seq., including mortgage lending and servicing services offered to New Jersey consumers.

92. Freedom Mortgage engaged in unconscionable commercial practices, deception, fraud, false pretense, false promise, and misrepresentation in connection with the servicing of Ms. Knox's mortgage loan and the prosecution of the State Court Action, including but not limited to: (a) causing the filing of the First False Affidavit on October 3rd, 2025; (b) causing the filing of the Second False Affidavit on June 25th, 2026, after Ms. Knox's active-duty status had been squarely placed at issue; (c) failing to satisfy its mandatory VA loss mitigation obligations under 38 C.F.R. section 36.4350 before commencing foreclosure; (d) prosecuting a foreclosure action without having established its standing as the holder of the original promissory note; (e) failing to strictly comply with the notice requirements of the New Jersey Fair Foreclosure Act, N.J.S.A. 2A:50-53 et seq.; and (f) causing or permitting the changing of the locks on the Property and the exclusion of Ms. Knox from her home without any lawful process or court order authorizing dispossession.

93. Ms. Knox suffered an ascertainable loss of money and property as a result of Freedom Mortgage's NJCFA violations, including the loss of equity in her home, legal expenses, the deprivation of possession of and access to her home and personal property, and financial harm resulting from the cloud on title and the prospect of losing her military Home of Record. See Block v. Seneca Mortgage Servicing, 221 F. Supp. 3d 559 (D.N.J. 2016) (recognizing NJCFA claims arising from mortgage servicing conduct before the District of New Jersey).

94. Pursuant to N.J.S.A. 56:8-19, Ms. Knox is entitled to treble her actual damages, attorneys' fees, and filing fees.

## COUNT IV

### VIOLATION OF VA LOAN LOSS MITIGATION REGULATIONS

### 38 C.F.R. section 36.4350

(Against Freedom Mortgage)

95. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

96. The subject loan is a VA-guaranteed mortgage subject to the regulatory requirements of the Department of Veterans Affairs, 38 U.S.C. sections 3710 et seq. and 38 C.F.R. part 36.

97. Under 38 C.F.R. section 36.4350(g), Freedom Mortgage was required, upon default, to send Ms. Knox written notice within the specified regulatory timeframes explaining available loss mitigation options and the servicer's goal of retaining home ownership where possible. Freedom Mortgage was further required to conduct and document a comprehensive evaluation of all available VA loss mitigation alternatives before initiating foreclosure.

98. Freedom Mortgage failed to satisfy its mandatory VA loss mitigation obligations before filing the foreclosure complaint on March 18th, 2025. A trial modification offered and subsequently cancelled in August 2023 did not fulfill the regulatory obligation to conduct a comprehensive, contemporaneous evaluation of all available loss mitigation options immediately prior to the commencement of foreclosure proceedings in March 2025.

99. Freedom Mortgage's failure to comply with 38 C.F.R. section 36.4350 caused Ms. Knox to lose the opportunity to obtain a loan modification, forbearance, or other loss mitigation relief that could have avoided foreclosure, resulting in substantial financial and personal harm.

## COUNT V

**VIOLATION OF THE NEW JERSEY FAIR FORECLOSURE ACT**

**N.J.S.A. 2A:50-53 et seq.**

(Against Freedom Mortgage)

100. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

101. The New Jersey Fair Foreclosure Act imposes mandatory pre-foreclosure notice requirements that are substantive conditions precedent to the right to foreclose. Strict compliance with these requirements, including the content and mailing requirements of N.J.S.A. 2A:50-56, is a prerequisite to the court's authority to grant foreclosure relief.

102. Freedom Mortgage failed to establish by competent, admissible evidence that its Notice of Intention to Foreclose satisfied the required statutory content or that it was properly mailed in strict compliance with N.J.S.A. 2A:50-56. Freedom Mortgage's reliance on bare certifications of mailing, without adequate evidentiary foundation, does not satisfy the strict compliance standard required by the FFA.

103. Freedom Mortgage's failure to satisfy the mandatory pre-foreclosure notice requirements is an independent basis upon which the State Court Action and the State Court Judgment are subject to vacatur.

**COUNT VI**

**NEGLIGENCE**

(Against Freedom Mortgage, Gross Polowy LLC, Patterson, and Shed)

104. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

105. Defendants owed Ms. Knox a duty of reasonable care in conducting their investigation of her military status before filing each of the False Affidavits and before seeking a judgment that would result in the loss of her home and military Home of Record.

106. Defendants breached that duty by: (a) failing to conduct a reasonable and diligent independent inquiry into Ms. Knox's military status prior to either filing; (b) relying solely on a DoD database search of known and documented limitation when independent red flags were present; (c) failing to review the VA loan file for indicators of active military status; (d) filing a sworn affidavit of non-military service without adequate factual basis on October 3rd, 2025; and (e) filing a second sworn affidavit of non-military service on June 25th, 2026, in the face of Ms. Knox's authenticated military documentation already before the court.

107. As a direct and proximate result of Defendants' negligence, Ms. Knox suffered all of the damages described herein.

## COUNT VII

## ILLEGAL EVICTION AND LOCKOUT

## VIOLATION OF 50 U.S.C. SECTION 3951 AND N.J.S.A. 2A:39-1 ET SEQ.

(Against Freedom Mortgage and John Does 1-10)

108. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

109. At all relevant times, the Property was premises occupied by Ms. Knox primarily as a residence within the meaning of 50 U.S.C. section 3951, and Ms. Knox was in a period of military service.

110. By changing the locks on the Property and excluding Ms. Knox from her residence without any court order authorizing dispossession, Freedom Mortgage and/or its agents evicted or attempted to evict Ms. Knox from her residence in violation of 50 U.S.C. section 3951(a).

111. The same conduct constitutes unlawful entry and detainer in violation of N.J.S.A. 2A:39-1 et seq. and unlawful self-help eviction under New Jersey law, because no writ of possession had been issued or executed, no sheriff's sale had occurred, and no court order

authorized any Defendant to take possession of the Property or to exclude Ms. Knox from it.

112.    Defendants' conduct was knowing and willful. At the time of the lockout, Defendants were on direct, documented notice of Ms. Knox's active-duty status through her motion practice in the State Court Action and her authenticated military documentation, and were on notice that no writ of possession had issued.

113.    Pursuant to 50 U.S.C. section 4042, Ms. Knox is entitled to appropriate equitable and declaratory relief, monetary damages, and costs for this violation of the SCRA. Pursuant to N.J.S.A. 2A:39-8, Ms. Knox is further entitled to restoration of possession of the Property and to damages against those responsible for the unlawful entry and detainer.

114.    As a direct and proximate result of the illegal lockout, Ms. Knox has suffered damages, including displacement from her home, denial of access to her personal property, out-of-pocket expenses, and severe emotional distress, in addition to all damages described herein.

## COUNT VIII

## DECLARATORY AND INJUNCTIVE RELIEF

## 28 U.S.C. sections 2201-2202; Fed. R. Civ. P. 57 and 65

(Against All Defendants)

115.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

116.    An actual, substantial, and justiciable controversy exists between the parties regarding: (a) the validity of the State Court Judgment; (b) the identity of the true holder of the Note; (c) Freedom Mortgage's standing to foreclose; (d) the lawfulness of the July 2026 lockout of Ms. Knox from the Property; and (e) Ms. Knox's rights under the SCRA and applicable federal regulations.

117.    Pursuant to 28 U.S.C. sections 2201 and 2202 and Federal Rule of Civil Procedure 57, Ms. Knox is entitled to a declaratory judgment: (a) that the November 7th, 2025 State Court

Judgment entered against her is void as a matter of federal law under 50 U.S.C. section 3931(g); (b) that Freedom Mortgage has failed to demonstrate that it is the holder of the Note with standing to foreclose; (c) that Freedom Mortgage failed to satisfy its mandatory pre-foreclosure obligations under 38 C.F.R. section 36.4350 and N.J.S.A. 2A:50-53 et seq.; and (d) that the July 2026 lockout of Ms. Knox from the Property violated 50 U.S.C. section 3951 and N.J.S.A. 2A:39-1 et seq.

118.    Pursuant to Federal Rule of Civil Procedure 65, Ms. Knox is entitled to a preliminary and permanent injunction: (a) directing Freedom Mortgage and all persons acting in concert with it to immediately restore Ms. Knox's full access to and possession of the Property; (b) enjoining Freedom Mortgage and all Defendants from proceeding with the State Court Action, scheduling or conducting any sheriff's sale, changing the locks, removing or disposing of any personal property from the Property, or taking any action to dispossess or exclude Ms. Knox from the Property pending final resolution of this action; and (c) directing Freedom Mortgage to take all steps necessary to vacate the November 7th, 2025 State Court Judgment.

119.    Ms. Knox will suffer immediate and irreparable harm if the foreclosure proceedings are permitted to continue and if she remains excluded from her home. The loss of her home, which is her official military Home of Record, and the ongoing deprivation of her possession of it, cannot be adequately compensated by money damages alone. The balance of equities and the public interest strongly favor protection of an active-duty servicemember from a foreclosure judgment procured through repeated false sworn affidavits and from a lockout executed without any lawful process. Defendants cannot demonstrate that continuation of the foreclosure or of the lockout advances any legitimate interest that outweighs the harm to Ms. Knox.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alexis N. Knox respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally where appropriate, and award the following relief:

A.  A declaratory judgment that the November 7th, 2025 Summary Judgment Order entered in the State Court Action is void as a matter of federal law pursuant to 50 U.S.C. section 3931(g);

B.  A declaratory judgment that Freedom Mortgage has failed to demonstrate that it is the holder of the original Note with standing to maintain the State Court Action;

C.  A declaratory judgment that the July 2026 lockout of Ms. Knox from the Property violated 50 U.S.C. section 3951 and N.J.S.A. 2A:39-1 et seq.;

D.  An order directing Freedom Mortgage and all persons acting in concert with it to immediately restore Ms. Knox's full access to and possession of the Property, including delivery of all new keys and access codes, and enjoining Defendants from changing the locks, posting the Property, removing or disposing of any personal property, or otherwise excluding Ms. Knox from the Property absent a lawfully executed writ of possession;

E.  An order compelling expedited discovery to identify the true holder of the Note, including production of the original Note, all endorsements, any pooling and servicing agreements, and all documents reflecting any transfer of the Note since origination on February 28th, 2022, together with the identity of all persons and entities involved in the changing of the locks on the Property;

F.  A declaratory judgment that Freedom Mortgage failed to satisfy its mandatory pre-foreclosure loss mitigation obligations under 38 C.F.R. section 36.4350 and its mandatory notice obligations under the New Jersey Fair Foreclosure Act, N.J.S.A. 2A:50-53 et seq.;

G.  A preliminary and permanent injunction enjoining Freedom Mortgage, its agents, servants, employees, and all persons acting in concert with it, from proceeding with the State Court Action, scheduling or conducting any sheriff's sale, or taking any action to dispossess Ms. Knox from the Property pending final resolution of this action;

H.  An order directing Freedom Mortgage to take all steps necessary to vacate the November 7th, 2025 State Court Judgment;

I.  Actual damages in an amount to be determined at trial;

J.  Punitive damages as warranted by the evidence of willful, repeated, and escalating misconduct, pursuant to 50 U.S.C. section 4043 and applicable common law;

K.  Treble damages pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-19;

L.  Attorneys' fees and costs pursuant to 50 U.S.C. section 4042(b), N.J.S.A. 56:8-19, and all other applicable authority;

M.  Pre-judgment and post-judgment interest as permitted by law; and

N.  Such other and further relief as the Court deems just, equitable, and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Alexis N. Knox hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*Alexis N Knox*

_____

Alexis N. Knox

Plaintiff, Pro Se

677 Zion Road

Egg Harbor Township, New Jersey 08234

Telephone: (609) 289-9482

Email: Aknox032@gmail.com

Dated: July 7, 2026

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

I, Alexis N. Knox, hereby certify that, based upon the information currently in my possession, the matter in controversy is the subject of one other action presently pending in a court of this State, specifically: Freedom Mortgage Corporation v. Alexis N. Knox, et al., Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. F-003056-25, a residential mortgage foreclosure action in which a Summary Judgment Order was entered on November 7th, 2025, in which a Motion to Vacate was denied on April 29th, 2026, and in which a Motion for Reconsideration was subsequently denied. The instant federal action arises from, and seeks relief with respect to, the conduct that occurred in and in connection with that state court proceeding, including violations of federal law. Plaintiff is contemporaneously seeking a stay of the state court proceedings and an injunction from this Court enjoining further proceedings in the State Court Action pending resolution of the federal claims asserted herein.

I am not aware of any other persons who should be joined in this action at this time, other than those named herein and such additional parties as may be identified through discovery.

Respectfully submitted,

*Alexis N Knox*

_____

Alexis N. Knox

Plaintiff, Pro Se

677 Zion Road

Egg Harbor Township, New Jersey 08234

Telephone: (609) 289-9482

Email: Aknox032@gmail.com

Dated: July 7, 2026

**CERTIFICATE OF SERVICE**

I, Alexis N. Knox, hereby certify that on this ___th day of _____, 2026, I caused a true and correct copy of the foregoing Complaint and Demand for Jury Trial, together with all accompanying papers and the summonses issued by the Clerk of the Court, to be served upon the following parties by the method indicated below, in accordance with Federal Rule of Civil Procedure 4:

Freedom Mortgage Corporation

c/o Registered Agent: [Name and Address of Registered Agent]

Method of Service:  [ ] Personal Service    [ ] Certified Mail, Return Receipt Requested

Gross Polowy LLC

95 Mount Bethel Road, Suite 3

Warren, New Jersey 07059

Method of Service:  [ ] Personal Service    [ ] Certified Mail, Return Receipt Requested

Alexa F. Patterson, Esq.

c/o Gross Polowy LLC, 95 Mount Bethel Road, Suite 3, Warren, New Jersey 07059

Method of Service:  [ ] Personal Service    [ ] Certified Mail, Return Receipt Requested

Courtney R. Shed, Esq.

c/o Gross Polowy LLC, 95 Mount Bethel Road, Suite 3, Warren, New Jersey 07059

Method of Service:  [ ] Personal Service    [ ] Certified Mail, Return Receipt Requested

Government National Mortgage Association (Ginnie Mae)

451 7th Street SW, Washington, D.C. 20410

(Service upon a United States agency additionally requires service upon the United States pursuant to Fed. R. Civ. P. 4(i), including the United States Attorney for the District of New Jersey and the Attorney General of the United States.)

Method of Service:  [ ] Personal Service    [ ] Certified Mail, Return Receipt Requested

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully submitted,

*Alexis N Knox*

_____

Alexis N. Knox

Plaintiff, Pro Se

677 Zion Road

Egg Harbor Township, New Jersey 08234

Telephone: (609) 289-9482

Email: Aknox032@gmail.com

Dated: July 7, 2026